UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN W. WINDSOR, JR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WHITMAN-WALKER CLINIC, INC., *et* )<br>*al.*, )<br>)<br>Defendants. )<br>) | Civil Action No. 07-1020 (RMC) |

**MEMORANDUM OPINION**

Plaintiff John Windsor Jr. was a firefighter who, while battling a fire in a building undergoing renovation, was severely injured when he fell from the second floor to the first floor. Mr. Windsor brought this suit in negligence, alleging that the building's owner, Whitman-Walker Clinic, Inc. (the "Clinic"), and the contractors performing the renovation are liable because the second floor hallway had no railing. The Clinic filed a motion to dismiss. Because the professional rescuer doctrine bars recovery in this case, the Clinic's motion will be granted.

**I.  FACTS**

On August 20, 2004, Mr. Windsor was working as a firefighter in Washington, D.C., when he responded to a dispatched call of a fire at 2303 Martin Luther King Jr. Avenue. Am. Compl. ¶ 6. The building was owned by the Clinic and it was undergoing renovation by a contractor,

Adams & Wright[1] (the "Contractor") and an unknown subcontractor. *Id.* ¶ 6.[2] Although the fire was in the basement of the building, there was heavy smoke and firefighters were dispersed to the first and second floors. *Id.* ¶ 7. Mr. Windsor was part of a team assigned to contain and extinguish the fire and smoke on the second floor and to search for persons who might be trapped. *Id.* ¶ 8. "After searching and securing the rear of the [building] on the second floor, [Mr. Windsor] made his way back toward the front of the [building] on the second floor, past the stairway. As [Mr. Windsor] passed the stairs in the hallway of the smoke[-]filled building, he fell from the second floor straight down to the first floor, due to the fact that there were no bannisters, and there was no railing or bracing with which he could have supported himself." *Id.* ¶¶ 9-10. Mr. Windsor suffered severe injuries to his neck, back, shoulders, and knees. *Id.* ¶ 12. He is permanently disabled. *Id.*

As a result of this incident, Mr. Windsor filed a complaint against the Clinic, the Contractor, and an unknown subcontractor alleging negligent maintenance of premises.[3] The Clinic now moves to dismiss, asserting that the professional rescuer doctrine bars Mr. Windsor's tort recovery.

---

[1] The Amended Complaint names the Contractor "Adams & Wright," while the Clinic's motion and reply designates the Contractor "Adams & Wight."

[2] The Amended Complaint names the subcontractor as a John Doe defendant.

[3] Mr. Windsor filed the original complaint in D.C. Superior Court. The Clinic removed the case to federal court under 28 U.S.C. § 1441 based on diversity jurisdiction. Mr. Windsor resides in Maryland, the Clinic and the Contractor are incorporated in Washington, D.C., the principal place of business of the Clinic is Washington, D.C., and the principal place of business of the Contractor is Virginia. Am. Compl. ¶¶ 1-3. Mr. Windsor seeks over $3 million in damages, well exceeding the amount in controversy requirement of $75,000. Thus, diversity jurisdiction is proper. *See* 28 U.S.C. § 1332.

## II. STANDARD ON MOTION TO DISMISS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). The court must treat the complaint's factual allegations — including mixed questions of law and fact — as true, drawing all reasonable inferences in the plaintiff's favor, *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003), *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003), and the facts alleged "must be enough to raise a right to relief above the speculative level," *Twombly*, 127 S. Ct. at 1965. But the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In deciding a 12(b)(6) motion, the Court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted).

## III. ANALYSIS

The professional rescuer doctrine prevents those engaged in rescue work, like firefighters and police officers, from recovering damages for on-the-job injuries that were the result of the negligence of others. *Lee v. Luigi, Inc.*, 696 A.2d 1371, 1373-74 (D.C. 1997). The rationale behind this rule is that professional rescuers have assumed the risks inherent in their profession. *Id*.

at 1374. Thus, professional rescuers are deemed to have assumed the risk of injury "from obvious dangers, those known to the rescuer during their course of work, or incidental to their work." *Id*.

The scope of the doctrine as it applies in cases asserting premises liability is illuminated by the case law. In *Lee v. Luigi*, for example, a police officer brought suit in negligence against a restaurant where the officer slipped and fell during the investigation of a suspected burglary. On the morning of the incident, the officer responded to a dispatcher's call for an activated alarm.[4] *Id*. at 1373. He entered the restaurant, which was closed for business, through an unlocked rear door, and called for back up. He then made his way up a stairway, cluttered with boxes and other items. When he reached the top of the stairs, the other officers had arrived and Officer Lee turned to descend the stairway. His holster caught on items stacked on the stairs and he slipped in something oily, falling and injuring himself severely. *Id*. The restaurant defended the suit based on the professional rescuer doctrine. Officer Lee argued that the doctrine did not apply because (1) at the time of his injury he had secured the premises and his professional duties had ended; and (2) his injury resulted from the independent negligence of the restaurant, negligent maintenance of the stairway, and not from any hazard usually associated with police work. The court rejected these arguments, finding that the officer was still engaged in police work at the time of the injury and that the condition of the stairs was not a hidden hazard and thus was a risk assumed by the officer.

> The condition of the stairs was there for Lee to observe, which he did on the way up. Moreover, police may reasonably expect that property owners may use portions of their premises to store items and that they may not keep them litter-free for those not expected ordinarily to enter those areas of the property.

---

[4] The restaurant's alarm system had been malfunctioning and had triggered approximately every 10 days for some time before this incident. *Lee*, 696 A.2d at 1373.

*Id*. at 1375-76.

Mr. Windsor argues that the professional rescuer doctrine does not apply to his case because his injuries were caused by the "independent negligence" of the defendants, citing *Scottish Rite Supreme Council v. Jacobs*, 266 F.2d 675 (D.C. Cir. 1959). Pl.'s Opp. at 6. In *Scottish Rite*, the D.C. Circuit permitted a firefighter to recover against a landowner for injuries he received when he fell into an uncovered shaft while fighting a fire. In a one paragraph per curiam opinion, the court explained, "The condition which gave rise to the injuries was not caused by or connected with the fire itself. It was alleged that the appellant owner had *with knowledge left a dangerous concealed condition on the premises*." *Id*. (emphasis added).

*Scottish Rite* is inapposite; that case rested on premises liability for a concealed condition. *See Lee*, 696 A.2d at 1376 (distinguishing *Scottish Rite* for the same reason). Here, the lack of a second floor railing was open and obvious, and firefighters can reasonably expect that a building undergoing renovation may present open dangers. Mr. Windsor argues that the condition of the landing was obscured by smoke from the fire, and thus the danger was hidden. *See* Pl's Opp. at 7. The risk presented by smoke, however, is one of those risks assumed by firefighters. The Clinic cannot be liable for knowingly leaving a "hidden" dangerous condition; there is no allegation that the Clinic knew that the condition of the stairway would be obscured from view, and needless to say, the smoke that allegedly obscured the view of the landing was not ordinarily present. The professional rescuer doctrine bars Mr. Windsor's complaint.[5]

---

[5] Because Mr. Windsor is barred from recovering for his on-the-job injuries that were the result of the negligence of others, the Court does not need to reach the issues of whether the Clinic can be liable for the alleged negligent failure to inspect the premises, whether the Clinic can be vicariously liable for alleged negligence of the Contractor and the John Doe subcontractor, or whether the lack of a railing violated any building codes and thereby constituted negligence per se.

## IV. CONCLUSION

For the reasons explained above, the Clinic's motion to dismiss [Dkt. # 7] will be granted and this case will be dismissed. A memorializing order accompanies this Memorandum Opinion.


Date: October 2, 2007                                    /s/
                                              ROSEMARY M. COLLYER
                                              United States District Judge